# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| SUSAN B. HANKS, | : | |
| Plaintiff | : | |
| v. | : | 5:05-CV-138 (WDO) |
| DR. WILLIAM RAGAN, et al., | : | |
| Defendants | : | |

## ORDER

Plaintiff Susan Hanks, who is incarcerated at the Pulaski State Prison, brought this case against various prison officials claiming deliberate indifference to her serious dental needs. The Magistrate Judge to whom this case was referred appointed counsel for Plaintiff to assist her in this case. Defendants filed a motion for summary judgment arguing they are entitled to qualified immunity from Plaintiff's claims because Plaintiff failed to show they were "deliberately indifferent" to her needs. Defendants contend this case presents a simple difference in medical opinion and not one of a constitutional deprivation over which this Court would have jurisdiction. The parties' motions and briefs were submitted to the Magistrate Judge who recommended that the defendants' motion for summary judgment be granted in part and denied in part.

Construing the facts in the light most favorable to Plaintiff, the record shows as follows. Plaintiff Susan Hanks was transferred to Pulaski State Prison in February 2003.

1

She had a dental intake exam on April 14, 2003, performed by Dr. William Ragan. Dr. Ragan recommended that Plaintiff have her remaining teeth extracted and that she be fitted for complete upper and lower dentures. In August 2003, Plaintiff was having significant problems with her bottom teeth grinding down. Dr. Ragan again recommended extraction and complete dentures and told Plaintiff that the entire process could be completed before Thanksgiving. Plaintiff decided to follow Dr. Ragan's recommended course of treatment and, on August 13, 2003, Dr. Ragan extracted all of Plaintiff's remaining teeth. The removal of her "eye tooth," tooth #27, required surgical extraction. Plaintiff began to experience pain three hours later as tooth and bone fragments began pushing upwards out of her gum at the extraction site. Dr. Ragan assured her this was a normal post operative condition and the remaining pieces would work themselves out without any problems or complications. Plaintiff contends that on August 24, 2003 she went to Dental Sick Call because of a painful protrusion on her gum and the irritation it was causing in her mouth, although it is not clear from the record whether she made an official, documented visit or somehow spoke to Dr. Ragan by other means. Dr. Ragan told her to wait for it to heal and that her denture impressions would be made on September 17. Plaintiff contends she went to Dr. Ragan on September 10, 2003 to complain about a knot on her gum but, again, the record is not clear on this fact. On September 17, 2003, Plaintiff saw Dr. Ragan again, at which time her gums were infected, but Dr. Ragan did not prescribe antibiotics to help with the infection or resulting pain and swelling. Plaintiff continued to suffer with the swelling and protrusion

in her gum at the site of the extraction of tooth #27.

In November of 2003, Dr. Ragan retired and was replaced by Dr. Williams. Plaintiff wrote the dental department of the prison in December of 2003 to ask for information regarding the completion of her dentures. Plaintiff received a response on December 23, 2003 from Vicki Phillips, the hygienist, that explained Plaintiff would be first on the list if the dental department resumed doing dentures.

Dr. Williams was deployed to active military duty in December 2003. During this time period, the prison had no routine dental care provider at all. Having gone nearly five months without teeth, Plaintiff filed a grievance with the Department of Corrections on January 9, 2004. The Department of Corrections responded with a determination that Pulaski State Prison had handled Plaintiff's dental problems adequately and appropriately. On January 9, 2004, Plaintiff also filed an Inmate Grievance Form notifying the prison officials that all of her teeth had been pulled months before with the assurance that she would receive dentures by Thanksgiving but that she was still not receiving those services and needed the dentures so she could eat. One month later, on February 9, 2004, Victoria Malone, Deputy Warden of Care and Treatment, advised Plaintiff Hanks that she was on the waiting list for dentures and would receive them as soon as routine work resumed. Plaintiff appealed her grievance on February 18, 2004 but on March 17, 2004, Steve Reese, DDS, Dental Director for the Georgia Department of Corrections, denied the appeal finding no evidence to warrant her complaints.

Dr. Williams returned in May of 2004. Dr. Brown-Spencer assured Plaintiff at this time that she was still at the top of the list for dentures. By September of 2004, Plaintiff had been without teeth for over a year and was still suffering from ulcers on her gums as well as continued pain and swelling at the site of tooth #27. Dr. Brown-Spencer noted the condition of Plaintiff's gums on September 23, 2004 and requested a consultation from Augusta Medical State Prison. On October 15, 2004, Dr. Hennessy of Augusta Medical State Prison performed oral surgery on Plaintiff to remove an impacted root tip at the site of tooth #27. The 16-month delay in treatment had been so long that there was new bone growth over the root of the tooth and removal of the root tip required drilling through bone. As a consequence of the oral surgeries and the continued lack of teeth, Plaintiff was almost completely unable to eat.

In November of 2004, Plaintiff inquired about the status of her dentures. The dental department did not take any further action until March of 2005 at which time Dr. Williams re-evaluated Plaintiff for dentures. In May of 2005, Plaintiff went to the dental department to have wax impressions made for her dentures but the dental staff was unable to see her and she waited more than three hours before being told she would have to reschedule. On June 8, 2005, Plaintiff's final bite impressions were made. On June 23, 2005, her final measurements were taken. By August, Plaintiff had open sores on her gums that were bleeding and oozing pus so she met with Deputy Warden Fowler who sent her to the Medical Department. Plaintiff paid a co-pay and was given antibiotics for the sores in her mouth. In

September of 2005, more than two years after having all of her teeth extracted, Plaintiff received dentures.

Plaintiff Hanks filed a civil rights complaint based on this denture ordeal pursuant to 42 U.S.C. § 1983 in the Northern District of Georgia on October 27, 2004 and the case was transferred to this Court in April of 2005. Plaintiff contends she was without teeth for more than two years and suffered through complications following her first oral surgery for over a year. She also underwent an invasive second oral surgery as a result of the failure of the dental staff to diagnose the impacted root tip in a timely manner. Plaintiff contends this establishes a deliberate indifference to her serious medical/dental needs that rises to the level of an Eighth Amendment "cruel and unusual punishment" violation. Plaintiff named as Defendants Dr. Ragan, Victoria Malone, the Deputy Warden of Inmate Care and Treatment, Vicki Phillips, the dental assistant, and Doctors Raymonds Wexler and Kevin Brown, the physicians who denied Plaintiff a "soft diet" and "slow eat card" respectively. The case was referred to a Magistrate Judge who reviewed the case and issued a Report and Recommendation to grant the motion for summary judgment in part and to deny it in part.

The Magistrate Judge recommended that the motion for summary judgment be denied as to Dr. Ragan because a "factual issue remains as to whether he was deliberately indifferent to Plaintiff's serious dental need prior to his retirement, e.g., whether more appropriate treatment should have been provided by him and whether dentures should have been provided prior to his retirement."

5

Dr. Ragan contends that the delay in Plaintiff's treatment was based on: (1) Plaintiff's knee surgery in October of 2003 and the recovery period thereafter; (2) Dr. Ragan's retirement; (3) Dr. Williams' deployment in active military service; (4) the impaction, surgical removal and subsequent swelling and healing of one of Plaintiff's removed teeth; and (5) an outside appointment that caused Plaintiff to miss one of her denture fitting appointments.

Plaintiff refutes the reasons given for the inordinate delay in receiving the care she needed. As for Plaintiff's knee surgery and recovery, the affidavit submitted by her expert, Dr. Heiden who has been practicing in the field for nearly 50 years, stated that there "is no medical or dental reason for a delay between arthroscopic knee surgery and the fitting for dentures." As for Dr. Ragan's retirement and Dr. Williams' deployment, Plaintiff contends the absence of a medical or dental professional from the prison is never a good explanation for failing to provide care for a serious medical need because the Georgia Department of Corrections Standard Operating Procedures provides for transporting a prisoner to the proper facility or health care provider outside of the prison gates for urgent needs - DOC SOP, § VI (A)(2)(b). Plaintiff was in fact transported to medical facilities outside the prison to perform her knee surgery and the oral surgery to extract the impacted root tip. Plaintiff contends that Defendants' refusal to follow these procedures evidences their deliberate indifference to her serious medical needs. As for the injury to Plaintiff's mouth following the extraction of her teeth, Dr. Heiden opined that Plaintiff could have been fitted with dentures immediately upon

6

removal of her remaining teeth. He further opined that immediate dentures, the standard of care in the dental profession, would have "allowed her tissue to conform to the denture and, with proper follow-up and assessment, which may require rebasing and adjustment she would have been able to immediately live with a working set of teeth. Even after removal of the root tip, dentures could have, again, been immediately applied, assuming that proper antibiotic treatment had been provided for the infection." Therefore, Plaintiff contends, because she could have been fitted with dentures immediately upon removal of her teeth there is no justification for a two-year delay in providing her with a set of working dentures and this delay was a deliberate indifference to her serious medical/dental need. As for Plaintiff having a conflict with one dental appointment, Defendants failed to elaborate on how this substantively contributed to the two-year delay in Plaintiff getting her much needed dentures.

In Farrow v. West, a case with nearly identical facts and circumstances as those in the case at bar, the court explained that a plaintiff must set forth evidence of an objectively serious medical need and prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations omitted). A "serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citation omitted). "In certain circumstances, the need for dental care combined with the effects of not receiving

7

it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." Id. at 1243-1244. The plaintiff in Farrow waited for 15 months for treatment of his serious dental problems. Although the court noted that having few or no teeth and a definite need for dentures does not per se constitute a serious medical need, "in Farrow's case, the evidence show[ed] pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems, establishing a serious medical need." Id. at 1244-1245.

> A jury accepting Farrow's account of his encounters with Dr. West and of Dr. West's conduct would be entitled to find that Dr. West was deliberately indifferent to Farrow's serious medical need. Farrow repeatedly told Dr. West about his pain, weight loss, bleeding gums, and soft diet, and thus Dr. West knew of a serious risk of harm to Farrow. During his October 19, 1999 visit, Farrow told Dr. West that he had only two lower teeth and no upper teeth. Farrow explained to Dr. West that, because of this condition, he was suffering from painful and bleeding gums and weight loss and that he had improvised a diet consisting only of soft foods. After listening to these complaints and conducting an examination of Farrow's mouth, Dr. West recognized Farrow's condition as constituting a serious medical need when he diagnosed Farrow's condition as mandating treatment and prescribed dentures for Farrow. Furthermore, on November 4, 1999, Dr. West knew that Farrow's weight loss was a problem and instructed Farrow to see a doctor for a physical examination. Dr. West thus had actual knowledge of Farrow's serious medical condition and a substantial risk of serious harm that could result from this condition. He was aware that Farrow, without dentures, likely would continue to suffer from pain and bleeding and swollen gums and that Farrow could experience other serious health problems, such as weight loss and malnutrition.

Id. at 1246. The court held that the substantial and inordinate delay in treatment raised a jury question as to Dr. West's deliberate indifference toward Farrow's serious medical need. Even though Farrow's condition did not require immediate attention, his claim survived

summary judgment "given his recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay in this case." Id. at 1247. Further, the defendants offered no reasonable explanation for the fifteen-month delay nor did they explain why Dr. West did not perform the third step in the denture construction process until nearly one year had passed after completing the wax bite. Id. (citation omitted). Therefore, an issue of fact was presented as to whether Dr. West displayed deliberate indifference to Farrow's serious medical need.

Based on the principles set forth in Farrow v. West, the Court must agree with the findings of the Magistrate Judge that there is a genuine issue of material fact regarding whether the considerable delay in Plaintiff's receiving much needed dental care was the result of unconstitutional deliberate indifference or simple negligence on Dr. Ragan's part. Accordingly, the motion for summary judgment as to Dr. Ragan is DENIED.

It was also recommended that the motion for summary judgment be denied as to Defendant Victoria Malone, the Deputy Warden of Care and Treatment, because (1) the record was unclear as to the responsibilities and powers Malone held; (2) it was possible that the more than two years in which Plaintiff was without dentures Deputy Warden Malone may have had the ability to provide for adequate care for the plaintiff but instead intentionally disregarded a medical need that Malone knew to be serious; and (3) an issue of fact appeared to be unresolved with respect to Malone's involvement in Plaintiff's dental process. In

9

Defendants' objection to the Report and Recommendation, Malone's duties were explained as follows: she is responsible for directing and overseeing programs, functions, and activities that provide care and treatment services to prisoners in areas such as counseling, recreation, education, medical, mental health, library and chaplaincy; she is not a trained or licensed dentist or physician; if a problem with an inmate's medical treatment arises, she discusses the problem with medical staff to attempt to facilitate a resolution; if a resolution cannot be reached, the inmate can use the Georgia Department of Corrections' grievance procedure to address the matter; and, Malone is not the supervisor for the medical department and any decisions relating to the delivery of, or access to, health care are made by licensed health care personnel. In the grievances Plaintiff submitted to Malone, she never mentioned that she was in pain, only that she wanted dentures. Based on the explanation of Deputy Warden Malone's areas of responsibilities and authority and her lack of knowledge of the severity of the problem, she cannot be held liable for medical decisions made by dental personnel over which she had very little, if any, authority to order or even request to act in a certain way. See Marsh v. Butler County, Ala., 268 F.3d 1014, 1035 (11th Cir. 2001) (prisoner alleging deliberate indifference must show state actor personally participated in the conduct in question or at least was aware of the particular circumstances of the prisoner's medical condition). The motion for summary judgment as to Defendant Deputy Warden Victoria Malone is therefore GRANTED.

For the reasons set forth in the Report and Recommendation, the motion for summary

judgment is GRANTED as to the remaining Defendants, Vicki Phillips, Doctor Brown and Doctor Wexler.

**SO ORDERED this 29th of March, 2007.**

**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**